UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| WORLD FUEL SERVICES (SINGAPORE) PTE. LTD., | CIVIL ACTION NO.: |
| PLAINTIFF | JUDGE: |
| v. | MAGISTRATE JUDGE: |
| M/V ATMOSPHERE (IMO# 9527283), her engines, tackle, apparel, etc., *in rem*, | |
| DEFENDANT. | |

## VERIFIED COMPLAINT

Plaintiff, World Fuel (Singapore) Pte. Ltd. ("World Fuel"), files its Verified Complaint against the *M/V ATMOSPHERE* (IMO #9527283), her engines, tackle, apparel, etc. (the "Vessel"), *in rem*, and would respectfully show as follows:

### JURISDICTION

1. This Court has admiralty jurisdiction under 28 U.S.C. § 1333, the Commercial Instruments and Maritime Lien Act ("CIMLA"), 46 U.S.C. §§ 31301-31343, and Rule C of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure (the "Supplemental Rules"). This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

2. Venue is proper in this District under 28 U.S.C. § 1391(b)(2).

## PARTIES

3.       Plaintiff World Fuel is an entity organized under the laws of a foreign state with a principal place of business located at 238B Thomson Road #16-01/07 Novena Square Tower B, Singapore 307685, engaged in the business of providing marine fuels to commercial vessels globally.

4.       The defendant Vessel is a bulk carrier that, upon information and belief, is sailing under the flag of the Republic of the Marshall Islands. The Court has jurisdiction over the Vessel *in rem* as the Vessel is or will be in the jurisdiction of the District during the pendency of this action.

## FACTS

5.       On or about April 17, 2025, Victory Shipping Pte. Ltd. ("Victory Shipping" or "Charterers"), as charterer, ordered from World Fuel the amount of 550-700 metric tons of very low sulfur fuel oil (ISO 8217:2010 RMG380) marine fuel bunkers at the sale price of $488.00/mt, which bunkers were to be delivered to a vessel in Singapore. At the time of the bunker order, the subject vessel was to be nominated ("TBN") at a later time.

6.       Brokers at Victory Shipping and World Fuel negotiated the price for the bunker sale via WhatsApp, and at approximately 2:49 p.m. (local time in Singapore), the sale was confirmed via WhatsApp, as is customary in the industry. A true and correct copy of the parties' WhatsApp transcript is annexed as **Exhibit 1**.

7.       The bunker order was memorialized by World Fuel Services (Singapore) Pte. Ltd. on April 17, 2025 via sales order confirmation sent by email at 3:27 p.m. local time in Singapore (the "Sales Order Confirmation"). A true and correct copy of the April 17th Sales Order Confirmation is annexed hereto as **Exhibit 2**.

2

8. As reflected in the Sales Order Confirmation, "[a]ll sales are on the credit of the vessel. Buyer is presumed to have authority to bind the vessel with a maritime lien. Disclaimer stamps placed by the vessel on the delivery receipt will have no effect and do not waive the Seller's lien." Ex. 2. Further, the Sales Order Confirmation advised that the bunker sale was subject to The World Fuel Services Marine Group of Companies General Terms and Conditions (the "GT&Cs"). A true and correct copy of the GT&Cs is annexed as **Exhibit 3**.

9. The World Fuel GT&Cs provide that "These General Terms and each Transaction shall be governed by the general maritime law of the United States of America, and the applicable federal laws of the United States of America… The General Maritime Law and the applicable federal laws of the United States of America shall apply with respect to the existence of a maritime lien, regardless of the country in which Seller takes legal action…" Exhibit 3 at Clause 21(b).

10. Approximately six hours after World Fuel's broker confirmed the sale, at approximately 9 p.m. local time, Charterers' broker sent a WhatsApp message stating, "Hi bro. We will be sending the usual bunker non lien thing. To yr email id. [sic] U don't have to acknowledge," to which World Fuel's broker responded "Ok bro". **Exhibit 1**.

11. An e-mail was sent by Victory Shipping shortly thereafter stating as follows:

> Please be advised that the bunkers (**VLSFO**) supplied to **MV ATMOSPHERE** are solely for the Charterers account, and that neither the vessel, the Owners nor the Master is a party to the bunker supply contract and no lien, encumbrance or any rights shall arise on the vessel in respect of above bunkers stemmed by the Charterers.
>
> Such bunkers are being furnished on the credit of the Charterers and not on the credit of the vessel or her Owners, and that the Bunker Sellers claim no maritime lien on the Vessel thereof.

A true and correct copy of the April 17, 2025 e-mail from Victory Shipping is annexed hereto as **Exhibit 4** (emphasis in original).

3

12. Following nomination of the Vessel M/V ATMOSPHERE, an updated sales order confirmation dated April 24, 2025 was issued by World Fuel ("Updated Sale Order Confirmation"). A true and correct copy of the April 24th Updated Sale Order Confirmation is annexed as **Exhibit 5**. The language of the Updated Sale Order Confirmation is identical to the first, including incorporation of the World Fuel GT&Cs and advising that the bunker sale is made on the credit of the vessel and gives rise to a maritime lien.

13. On May 8, 2025 in response to Victory Shipping's e-mail advising that the Vessel's owners are not party to the bunker sale contract, World Fuel again expressly rejected Charterers' assertion of no-lien, stating "[a]s this notice came after our stem, we are not able to accept non lien." *See* Exhibit 4.

14. Victory Shipping provided no further response to World Fuel after World Fuel advised Victory Shipping on May 8, 2025 that World Fuel was "not able to accept non-lien."

15. On or about May 12, 2025, pursuant to the parties' contractual agreement, World Fuel, via local bunker supplier, delivered to the Vessel approximately 624 metric tons of very low sulfur fuel oil (ISO 8217:2010 RMG380) in Singapore. A Bunker Delivery Note ("BDN") issued by the physical supplier Singamas Petroleum Trading Pte Ltd and countersigned by the Vessel's Master or Chief Engineer memorialized the delivery of 624.251 metric tons to the Vessel. A true and correct copy of the BDN for the bunkering is annexed as **Exhibit 6.**

16. No objections or protests were raised by the Vessel, its owners, or its charterers with respect to delivery of the bunkers to the Vessel. Specifically, no stamp or notice of protest advising that Charterers lacked authority under the relevant charter party to bind the Vessel to a maritime lien was issued or communicated to either the physical supplier or to World Fuel.

17. Following delivery, World Fuel issued an invoice to Victory Shipping as well as to the Vessel for the services rendered in the amount of $304,634.49. A true and correct copy of the invoice issued for the bunkers supplied on May 12, 2025 is annexed as **Exhibit 7**.

18. Despite the bunkering having been provided to the Vessel on May 12, 2025, payment in full has not been received by plaintiff World Fuel as invoiced. Specifically, the amount of **$304,634.49** remains outstanding on the invoice and remains due and owing to World Fuel.

19. In addition to the foregoing principal amount due, the GT&Cs provide that:

    a. Interest will accrue on late payments at the rate of 2% per month;

    b. A 5% administrative fee will accrue should the buyer's payment for the bunkers be more than 15 days past due from the due date of the invoice; and

    c. World Fuel is entitled to recover its attorneys' fees incurred in collecting on its invoices, including but limited to attorneys' fees incurred in enforcing World Fuel's maritime lien against vessels supplied.

20. Based on the foregoing, interest and administrative fees are currently due and owing in the total amount of $43,274.79.

21. Plaintiff estimates that, should this case proceed to trial one year from now, the foregoing additional charges will amount to $125,000.29 plus an estimated $500,000 in legal fees.

22. Plaintiff's cumulative claim, therefore, amounts to **$929,634.78**.

### Maritime Lien

23. By ordering bunkers from World Fuel, Victory Shipping Pte. Ltd. acted on behalf of the Vessel and thereby procured bunkers on behalf of the Vessel in accordance with the Commercial Instruments and Maritime Liens Act ("CIMLA") (46 U.S.C. §§ 31301-31343). Furthermore, by signing and stamping the BDN, the Master/Chief Engineer of the Vessel acted on

behalf of the Vessel and its owners to procure bunkers, and thereby accepted the bunkers on behalf of Vessel in accordance with the CIMLA (46 U.S.C. §§ 31301-31343).

24. The attempted disclaimer of the maritime lien by Victory Shipping was ineffective to rebut the presumption reflected in CIMLA that the Vessel's charterer is authorized to bind the Vessel to a maritime lien. Specifically, there is no indication that the relevant charter party between the Vessel owner and Victory Shipping contains any provision limiting Charterers' authority to bind the Vessel, and if there is such a clause, Charterers failed to put World Fuel on actual notice of any such provision.

25. Notwithstanding Victory Shipping's April 17, 2025 communication asserting that the Vessel and its owner are not party to the bunker sale contract, maritime liens for necessaries arise by operation of law under CIMLA, and Charterers are presumed to have authority to bind the Vessel to a maritime lien, regardless of whether owner is party to the contract.

26. Any communications made by Victory Shipping concerning maritime liens against the Vessel were made subsequent to the contractual agreement reached by the parties, and any attempt to vary the terms and conditions of the agreement was expressly rejected by World Fuel.

27. The said bunkers delivered to and accepted by the Vessel were necessary to the accomplishment of her mission, to wit: commercial trade as a merchant ship.

28. The Vessel received the benefit of the aforementioned bunker deliveries and is indebted to Plaintiff and obligated to pay for the aforementioned bunkers.

29. Plaintiff performed all conditions precedent to warrant full and complete payment for the aforementioned bunkers under the terms of the bunker sales agreement.

30. As a result of the foregoing, Plaintiff possesses a maritime lien on the Vessel for the provision of necessaries, i.e., bunker fuel, enforceable in admiralty in accordance with the provisions of Rule C of the Supplemental Rules, in the above-stated amount of **$929,634.78**.

**WHEREFORE**, Plaintiff World Fuel Services (Singapore) Pte. Ltd. prays:

1. That *in rem* process, according to the practice of this Honorable Court in matters of admiralty and maritime jurisdiction, may issue against the whole of the *in rem* defendant *M/V ATMOSPHERE* (IMO #9527283), her engines, tackle, apparel, etc., pursuant to Rule C of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure;

2. That all persons or entities having or claiming any interests in the *M/V ATMOSPHERE* be cited to appear and answer under oath;

3. That a judgment in condemnation and sale be entered against the *in rem* defendant *M/V ATMOSPHERE* in the amount of any judgment recovered by the Plaintiff, with costs and interest to be paid out of the proceeds thereof, which amount currently is estimated to be **$929,634.78**; and

4. That this Court grant such other and further relief as may be just and proper in the circumstances.

Date:   October 30, 2025
        New Orleans, Louisiana

Respectfully submitted,

HOLLAND & KNIGHT LLP


/s/ L. Bradley Hancock
L. Bradley Hancock (LA Bar 27234)
811 Main Street, Suite 2500
Houston, Texas 77002
Telephone: (713) 244-6868
brad.hancock@hklaw.com

Marie E. Larsen (*pro hac vice* forthcoming)
787 7th Avenue
New York, NY 10019
Telephone: (212) 513-3477
marie.larsen@hklaw.com

*Attorneys for Plaintiff*
*World Fuel Services (Singapore) Pte. Ltd.*

## VERIFICATION

I, Bradley Hancock, declare in accordance with 28 U.S.C. § 1746 as follows:

1. I am a member of the law firm Holland & Knight LLP, counsel for the Plaintiff.

2. The facts alleged in the foregoing Verified Complaint are true and correct based upon my information and belief. The basis of my information and belief is the information from Plaintiff, World Fuel Services (Singapore) Pte. Ltd., and from my review of the various documents and materials provided to me by Plaintiff.

3. The authorized officers of Plaintiff are not readily available in this District to make verifications on Plaintiff's behalf. I am authorized to make this Verification on Plaintiff's behalf.

4. Pursuant to Rule C of the Supplemental Rules, I verify that the facts alleged in the foregoing Verified Complaint are true and correct as noted above.

Under penalty of perjury, I declare that I have read the foregoing document and that the facts stated in it are true as noted herein.

Executed in Houston, Texas on this 30th day of October, 2025.

_____
L. Bradley Hancock